[No. 3255.    Decided September 20, 1899.]

JAMES BARNES, JR., *Respondent,* v. THE GERMAN SAVINGS AND LOAN SOCIETY, *Appellant.*

REAL ESTATE BROKER—RIGHT TO COMMISSION.

Where a broker for the sale of real estate obtains a purchaser ready, able and willing to pay, informs the owner of such fact and produces the purchaser, although the broker has no formal contract with the purchaser which may be specifically enforced, he is entitled to his commission, when the owner chooses to deal with the purchaser on other terms.

Appeal from Superior Court, King County. — Hon. ORANGE JACOBS, Judge. Affirmed.

*Struve, Allen, Hughes & McMicken,* for appellant.

*Donworth & Howe* (*Piles, Donworth & Howe,* of counsel), for respondent.

The opinion of the court was delivered by

REAVIS, J.—Action upon a contract of brokerage between plaintiff, assignee of A. B. Stewart, and the defendant and appellant, for commission. The defendant owned the Safe Deposit Building, in Seattle. Stewart desired to rent the building. The defendant did not wish to lease the building, but desired to sell; whereupon defendant offered to sell the building to Stewart for $65,000 net, and to allow all the purchase price above that sum to go to Stewart as commission for procuring the sale. Stewart employed the plaintiff as an assistant broker. Negotiations were had between Stewart and McNeill Bros., a corporation, through its agent, H. W. McNeill, and Stewart finally communicated to the defendant that he had effected a sale of the building for $70,000, and asked to be directed where to deposit the purchase price. In answer to such communication, Stewart was advised by defendant that it had another offer of $67,500 for the building, and such offer was finally accepted by defendant, and the building purchased by McNeill Bros.

The issues raised here are substantially questions of fact, which were before the jury at the trial of the cause. In this view, it is unnecessary to review conflicting testimony. It was determined by the jury that Mr. Tourny, the agent, was authorized to make the contract of brokerage alleged for defendant, and that such contract extended until Saturday succeeding the Friday on which the agreement was made between McNeill Bros. and Stewart, by which McNeill Bros. agreed to purchase the building for $70,000; and it was also determined that the purchaser

29—21 WASH.

was ready, able and willing to pay the purchase price, and that this fact was communicated to defendant. It also appears that Stewart and plaintiff were the procuring cause of the sale. They found the purchaser; they brought it to defendant, and a sale was afterwards consummated between the defendant and the same purchaser. Almost simultaneously with the communication from Stewart to defendant of the offer or sale of the building for $70,000, the rental agent of defendant, in charge of the building in Seattle, communicated from the same purchaser an offer to purchase the building for $67,500, which was ultimately accepted by defendant, and a sale made for that price.

It is maintained by the learned counsel for appellant that, because no formal contract was executed between Stewart and McNeill Bros., which could have been enforced in an action for specific performance, Stewart's communication that the building was sold was misleading; that his brokerage contract with defendant was not completed until an enforcible sale was actually concluded. In *Carstens v. McReavy,* 1 Wash. 359 (25 Pac. 471), it was stated that it was not necessary for a broker to obtain a written contract with his prospective purchaser, but, if he found a purchaser who was ready, able and willing to purchase and the owner was informed of such fact and the purchaser actually produced, the broker was entitled to his commission, although the sale was defeated through the act of the owner, or the owner chose to deal with the purchaser on other terms. Not only was the purchaser found by the broker in the case at bar, but a cogent inducement, in fact the immediate procuring cause of the purchase of the building, seems to have been the contract of lease arranged between the firm which Stewart represented and the purchaser, which was for a long term; that is, the investment was the more immediately desirable and avail-

able because of this lease; and the sale was finally made by the defendant and the purchaser being directly brought together, and the defendant itself accepted a less sum than $70,000, which was the offer made to Stewart and communicated by him to defendant.

The errors assigned upon the instructions have been examined and are not deemed important. It was immaterial whether the contract of brokerage between Stewart and defendant was exclusive, because no other broker appears in the case, and no question can arise concerning it. The letter of Stewart to the defendant after the rejection of Stewart's offer, and the answer thereto by the agent of the defendant, were merely correspondence occurring between the parties and explanatory of the relations between Stewart and defendant, and therefore they were proper for the consideration of the jury. The remarks of the court upon their admission were not primarily directed to the jury, but suggestions made for the benefit of counsel.

From a review of the evidence and the fair inferences to be drawn therefrom, it appears that the jury were fully warranted in coming to the conclusion expressed in the verdict, and the judgment is affirmed.

GORDON, C. J., and DUNBAR and ANDERS, JJ., concur.