JOHN F. BAARS v. GEORGE HYLAND.[1]

June 17, 1896.

Nos. 9892—(107).

**Real-Estate Broker—Finding a Purchaser.**

Under a contract by the terms of which a real-estate broker was to receive a commission for his services if he found a purchaser, *held*, he has not found a purchaser within the meaning of the contract until he has produced such purchaser to his principal, the owner.

**Same—Sale by Owner—Commission.**

The broker did not have the exclusive right to sell. After he had found a purchaser ready and willing to buy on the owner's terms, but before he had notified the owner thereof, the owner found another purchaser, and closed a sale with him. *Held*, the owner was not liable to the broker for a commission.

Appeal by defendant from an order of the district court for St. Louis county, Charles L. Lewis, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $1,150. Reversed, and judgment ordered for defendant.

*Manwaring & Sullivan* and *Teare & Middlecoff*, for appellant.

*Billson, Congdon & Dickinson*, for respondent.

CANTY, J. Defendant was the owner of a quantity of standing pine timber in this state, which had been damaged by fire, and he was anxious to dispose of the same in time to have it cut the following winter, as it would become almost worthless if not cut. Under these circumstances he employed plaintiff, a broker doing busi-

1 Reported in 67 N. W. 1148.

ness at Duluth, to find a purchaser for the standing pine. This was about October 25, 1894. The terms of sale were changed, and the time extended several times, until it was finally limited to November 16 following. At 8 o'clock in the evening of that day plaintiff found a purchaser ready and willing to buy on defendant's terms, it being a lumber company, with whom plaintiff had been negotiating for some time prior. At 9:14 p. m. he telegraphed defendant at his place of residence at Danville, New York, by a night message, that he had found a purchaser. The message was delivered to defendant at Danville the next morning, November 17, at 9:15; but he had already on that morning, before he received the message, closed a sale of the timber to another party at the same price, and refused to deal with the purchaser plaintiff had found, or pay plaintiff a commission for finding him. Thereupon plaintiff brought this action to recover such commission, obtained a verdict, and from an order denying a new trial defendant appeals.

We are of the opinion that the verdict is not sustained by the evidence. It is admitted by plaintiff that he did not have the exclusive right to find a purchaser, and that by his contract he was to have no compensation unless he succeeded in finding a purchaser within the time limited. It is well settled that in such a case, and while the agent is engaged in trying to find a purchaser, the owner may sell the property if he can; and if he does so before the agent has found a purchaser he will not be liable to the agent for commissions, unless he has sold to a purchaser procured by the agent. Armstrong v. Wann, 29 Minn. 126, 12 N. W. 345; Putnam v. How, 39 Minn. 363, 40 N. W. 258; Dole v. Sherwood, 41 Minn. 535, 43 N. W. 569.

The next question is: When, under such a contract, has the agent earned his commissions by finding a purchaser? Is it when the agent himself has found the purchaser, or when the principal has found him through the agent? Is it sufficient that the agent has himself found a person ready and willing to buy, or must he produce that person to his principal? Must he bring the parties together, so that the principal has also found the purchaser? We are clearly of the opinion that he must. He must at least put the principal in communication with the proposed purchaser. The principal must have an opportunity to make a binding contract with the proposed purchaser before the agent has earned his commission.

In Francis v. Baker, 45 Minn. 83, 47 N. W. 452, it is said:[2] "Where a person agrees with a real-estate broker to pay him a commission if he procures a purchaser for his property on specified terms, the broker, in order to entitle him to his commission, is bound to present a purchaser who is ready, able, and willing to buy on the proposed terms." In Grosse v. Cooley, 43 Minn. 188, 45 N. W. 15, it is said: "A real-estate broker is entitled to his commission under a contract like this when he produces a purchaser able, ready, and willing to buy on the owner's terms." In Putnam v. How, 39 Minn. 363, 40 N. W. 258, it is said: "It was necessary that plaintiff should make a sale of the farm, or at least procure and bring to defendant a purchaser ready and willing to buy on the terms offered." In Hayden v. Grillo, 35 Mo. App. 647, the broker had found a purchaser for cash, taken earnest money, and asked the owner to sign a receipt for it, but did not disclose the purchaser's name. The owner refused, thought the property had raised in price, and wanted time to consider. Nothing more was done by either the owner or broker until the latter sued the former for commission. It was held that the broker was not entitled to commission until he either had obtained a binding agreement from the proposed purchaser or had produced him to the owner, unless this was waived by the owner's refusal to complete the contract; and that, even where the sale was for cash, the broker must produce, not merely the earnest money, but also the purchaser, and, if he fails to do so, his principal may be justified (without defining his position) in suspecting that the agent is merely attempting to speculate on his principal's property, although the agent is in fact acting in good faith. In the case of Gunn v. Bank of California, 99 Cal. 349, 33 Pac. 1105, the broker found a purchaser ready and willing to buy, took earnest money from him, and procured from the owner an abstract for him to examine, but never disclosed to the owner the name of the proposed purchaser until after the latter had examined the abstract and rejected the title because of a defect therein which rendered the title unmarketable. The court held: "The question here is, what is 'finding' or 'producing' a purchaser? * * * Is it sufficient for a broker to merely find a person financially able, and who verbally agrees with him to

[2] At page 84.

purchase upon the terms of the vendor, and makes a deposit, but who neither signs a binding agreement to purchase upon such terms, nor is produced before the vendor as a person ready and willing to enter into such a contract? It seems to us very clear that this question must be answered in the negative. The contract of the broker is to negotiate a sale; that is, to procure a valid contract to purchase, which can be enforced by the vendor if his title is perfect; or if he does not procure such contract, to bring the vendor and the proposed purchaser together, that the vendor may secure such a contract." In the case of Darrow v. Harlow, 21 Wis. 302, the owner found one purchaser after the broker had found another, but before he notified the owner of the fact. The broker brought suit for his commission. The case is quite similar in principle to this, and there the court held the meaning of such a contract is that the broker is to have his commission "if he, within a reasonable time, before the defendant himself sold his farm, found a customer who would purchase it, and notified the defendant thereof." That the broker has not earned his commission until he has brought the buyer and seller together, see, also, Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, and Wylie v. Marine Nat. Bank, 61 N. Y. 415.

Then, conceding that this plaintiff had all of November 16 in which to find a purchaser, and a reasonable time thereafter in which to give defendant notice thereof, still his right to compensation was subject to the contingency that defendant might himself sell to some other purchaser before he received such notice from plaintiff, and, if that contingency happened, plaintiff's right to compensation was defeated. That contingency did happen, and we are therefore of the opinion that plaintiff cannot recover. It appears by the evidence that defendant could readily be found when wanted, and apparently acted in the best of faith with plaintiff. He had not suddenly gone away where he could not readily be found, and thereby delayed plaintiff in notifying him; and he did not find the other purchaser after the time when he would have been notified by plaintiff if the latter had not been so delayed. On the contrary, he was where plaintiff had expected to find him.

The order denying the motion of defendant for judgment in his favor, made with the motion for a new trial, is reversed, and judgment in the court below is ordered for defendant.